STROUD MUNICIPAL HOSPITAL
and Own Risk Carrier #14502,
Petitioners,

v.

Jeff MOONEY and The Workers'
Compensation Court,
Respondents.

No. 85947.

Supreme Court of Oklahoma.

Nov. 26, 1996.

As Corrected Dec. 11, 1996.

Donald A. Bullard, Chubbuck, Bullard & Hoehner, Oklahoma City, for Petitioners.

Fred L. Boettcher, Walt Brune, Boettcher Law Offices, Inc., Ponca City, for Respondent Jeff Mooney.

SUMMERS, Justice:

The only issue in this Workers' Compensation review is whether the lower court's decision that the Claimant's injury arose out of and in the course of his employment is supported by competent evidence. Applying the statutory and case law to the facts before us, we conclude that it is.

Claimant Mooney worked for the Stroud Hospital as a laboratory supervisor. On the date in question he went home for lunch, and had been there fifteen minutes when the Hospital called. He was told to return for an emergency; a man in the Emergency Room was believed to have suffered a heart attack and Mooney was needed for blood work. He immediately headed for the hospital, but on the way his car was hit broadside in an intersection by a driver who failed to yield. Claimant suffered injury to his neck requiring surgery, including a fusion of his vertebra with a bone graft from his hip.

The Workers' Compensation Court, the Honorable Terry Pendell, Judge, awarded benefits, finding that the Claimant's response to the emergency call was a special mission for the employer, and that the injury arose out of and in the course of employment. A three-judge panel vacated a portion of the award pertaining to the Claimant's back, but in all other respects sustained the trial courts' award as neither contrary to the law nor against the weight of the evidence. The Hospital appealed, arguing that the worker was simply returning to work, and that injuries sustained going to and from the workplace are not compensable. The Court of Appeals agreed with Hospital and vacated the award. We have granted certiorari.

■ For an injury to be compensable under the Workers' Compensation Act it must "arise out of" and be "in the course of" employment. 85 O.S.Supp.1993 § 11. Whether an injury arises out of and in the course of employment is an issue of fact to be determined by the Workers' Compensation Court, and such a finding is not to be disturbed on appellate review "where there is *any competent evidence* to support the order subject to review." *Stiles v. Okla. Tax Comm'n,* 752 P.2d 800, 802 (Okla.1987) (emphasis in original). Title 85 O.S.1991 § 26(B) provides that "The decision of the Workers' Compensation Court shall be final as to all questions of fact...." Only in the absence of support in competent evidence may a trial court's decision be found erroneous as a matter of law on review. *Parks v. Norman Municipal Hospital,* 684 P.2d 548, 552 (Okla. 1984).

■ The clauses "arise out of" and "in the course of" are not interchangeable. The former contemplates a causal relationship between the act being done at the time of injury and the requirements of employment, while the latter relates to the time, place, or circumstances under which the injury occurs. *Fudge v. University of Oklahoma,* 673 P.2d 149, 150 (Okla.1983).

■ Hospital is correct that as a general rule an injury sustained while going to or from an employer's premises is not one arising out of and in the course of employment within the meaning of the Act. *Christian v.*

*Nicor Drilling Co.,* 653 P.2d 185, 186 (Okla. 1982). There are exceptions to this doctrine, as we pointed out in *Fluor Engineers & Contr. Inc. v. Kessler,* 561 P.2d 72, 74 (Okla. 1977):(1) if the employer furnishes the transportation or pays travel expenses, (2) if the employee is assigned a special task outside regular working hours, or (3) if the injury occurs on premises owned or controlled by the employer. Awards have also been sustained where the employee, on his way to or from work, is still charged with some duty in connection with employment, *Novak v. McAlister,* 301 P.2d 234, 235 (Okla.1956), and when the employee is engaged in a dual purpose trip. *F.W.A. Drilling Co. v. Ulery,* 512 P.2d 192, 194 (Okla.1973).

Today's case turns on whether the "special task" exception applies. The trial court found that it did, and the appellate court found that it did not. Here is what Professor Larson says about the special mission or special task rule:

When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 Larson, *The Law of Workmens' Compensation,* § 16.10.

■ Whether the claimant is engaged in a special mission for his employer is a question of fact to be determined by the trial tribunal. Hospital argued, and the Court of Appeals concluded, that even if the injury occurred "in the course of" employment (Mooney was on his way to render emergency room work at demand of employer), it did not "arise out of" employment, because the risks of driving to the hospital at that particular time were no greater than the risks all the public took in driving that route. This argument misses the point.

In *City of Edmond v. Monday,* 910 P.2d 980 (Okla.1995), there was evidence to sup-

port the trial courts' finding that claimant broke away from a personal errand to check the employer's mail. In crossing the street she fell on a curb and broke her hip. Although she was at no more risk than any other pedestrian crossing the street we sustained the award; there was evidence that she was about her employer's business.

In *Fudge, supra,* there was *no* evidence to support an order *denying* compensation where the employee had to cross a busy street to reach her car in an employer-owned parking lot. Although she was at no more risk than the rest of the public who crossed that street, we directed an award; the employer chose to place its parking lot for employees in that position.

■ In other words, once it is determined that the employee is doing the employer's work, e.g., is on a special mission, it does not avail the employer to say the risks of injury to the employee are no greater than the risks to the general public. On this special mission the Claimant's task, his job, was to promptly drive to the emergency room for an emergency. Getting there to accommodate his employer was what he was told to do and what he attempted to do. Similar is the case of a truck driver hired to drive from one destination to another, where the truck driver is exposed to no more risk than the general motoring public, but because his mission is employment related it follows that an injury resulting from those risks is causally connected to the employment. For a discussion of employment—related risk see *American Management Systems, Inc. v. Burns,* 903 P.2d 288, 291, 292 (Okla.1995).

■ In our case there was evidence before the trial court that the Claimant had certain working hours with a normal one hour break for lunch. Some fifteen minutes into that break Hospital interrupted his lunch with a call that he return immediately for an emer-

gency procedure. In obeying that directive Claimant was injured. On this record it could be found that Claimant's return trip was "outside regular working hours", and within the "special mission" exception. See *Fluor Engineers, supra; Larson, supra.*

The order of the trial court finding the injury to have arisen out of and in the course of his employment is thus supported by competent evidence. Whether he was engaged in a special mission for the employer when injured was a question of fact to be determined by that court. *City of Edmond, supra.* The opinion of the Court of Appeals is vacated. The order of the Three–Judge Panel of the Workers' Compensation Court is sustained.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, HARGRAVE and WATT, JJ., concur.

SIMMS, J., concurs in judgment.

OPALA, J., concurs in result but not in the court's opinion.

OPALA, Justice, with whom SIMMS, Justice, joins, concurring in result but not in the court's opinion.

The court holds today that the claimant, when injured in a traffic accident between his home and the workplace, was on a "special mission" for his employer. I write separately to *identify* and *explain* the interplay of risks that bear upon his claim's compensability.

As the court correctly notes, a compensation claimant must satisfy a two-pronged statutory test[1] by showing that the accidental harm to his body 1) occurred "in the course of the employment,"[2] *and* 2) "*arose out of the employment.*"[3] This claimant met the first prong of the test because he was clearly *in the course of* his employment. Ac-

---

**1.** " 'Injury' or 'personal injury' means only *accidental* injuries *arising out of* and *in the course of* employment..." (Emphasis added) 85 O.S. Supp. 1996 § 3(7)a.

**2.** The term "in the course of employment" relates to the time, place, or circumstances under which the injury is sustained. *Darco Transportation v. Dulen,* Okl., 922 P.2d 591, 594 (1996); *Thomas v. Keith Hensel Optical Labs,* Okl., 653 P.2d 201, 203 (1982); *J. Allison v. Boling,* 192 Okl. 213, 134 P.2d 980, 982 (1943).

**3.** The term "arise out of employment" contemplates the causal connection between the injury and the risks incident to employment. *Darco,* supra, note 2 at 594; *Hensel,* supra, note 2 at 202; *Richey v. Commander Mills, Inc.,* Okl., 521 P.2d 805, 808 (1974); *Graham v. Graham,* Okl., 390 P.2d 892, 893 (1964); *Stanolind Pipe Line Co. v. Davis,* 173 Okl. 190, 47 P.2d 163, 164 (1935).

cording to *undisputed* proof, he was injured when returning to his job site in response to a call by the employer who had summoned him back to work from a lunch break at home. The second prong—that of *arising out of* the employment—*is the central issue in contention before us.* Because claimant's harm is attributable to a single risk factor—*the traffic hazard*—the second prong of the test must also be regarded as passing muster.[4] To a servant ordered back to the workplace from his off-the-premises lunch break to perform an emergency task for the master traffic *is* an employment-related hazard.[5] There is her an *absolute* evidentiary vacuum for the presence of *any* risks that are strangers to the hazards legitimately to be associated with employment. Claimant hence bore no probative responsibility to rule out any unrevealed or imaginary *personal or neutral risks.*

## I.

### CLAIMANT'S IN-TRAVEL INJURY STANDS INCLUDED WITHIN THE COURSE OF HIS EMPLOYMENT BY THE SPECIAL–TASK DOCTRINE

Travel to and from the workplace during one's regular work hours is generally regarded as outside the scope of employment.[6] A well-recognized exception to the general rule governs situations when the employee is directed to perform a task in furtherance of the master's business during off-hours.[7] Claimant, while at home during his lunch break, was suddenly called away to the workplace on his master's mission. He was injured in a traffic mishap *after* responding to the master's command and *before* reaching the destination. The special-task exception clearly is to be applied here. In short, the claimant was driving *in the course* of his employment when the accident occurred.[8]

## II.

### THE SOLE RISK OF HARM PRESENT IN THIS CASE ARISES OUT OF AND IS CAUSALLY CONNECTED TO CLAIMANT'S EMPLOYMENT

The law recognizes three different categories of risk associated with injuries claimed to be compensable: 1) those so uniquely associated with employment that they may be regarded as distinctly employment-related, 2) those purely personal to the worker, and 3) those that are neutral.[9] An intermixture of employment-related hazards with those that are strangers to the milieu might be regard-

---

**4.** See *Oklahoma Natural Gas Company v. Williams*, Okl., 639 P.2d 1222 (1982), where a claimant who attended a company Christmas party was injured in a traffic accident while returning home. Claimant's after-hours travel from his home to the party and back was held to be a special mission—one outside his work routine.

**5.** See *Darco Transportation v. Dulen*, supra, note 2, at 596, which holds that for a truck driver who is in the course of travel for his master traffic perils are employment-related risks.

**6.** *Christian v. Nicor Drilling Co.*, Okl., 653 P.2d 185, 186 (1982); see text in 1 Larson's Workmen's Compensation Law, (1996), § 15.00 et seq.

**7.** *Oklahoma Natural Gas Company v. Williams*, supra, note 4.

**8.** See supra, note 5.

**9.** "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and 'neutral' risks—i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance. When employment and personal risks concur to produce injury, the injury arises out of the employment, since the employment need not be the primary cause, but need only contribute to the injury." 1 Larson's Workmen's Compensation Law § 7.00 (1996), at 3-12; Michael E. Utter, 'Arising out of and in the Course Of...; *Burns v. American Management'*

ed as a fourth category.[10] Risks that are solely connected with job performance are *employment-related*.[11] Among *personal risks* are crimes intentionally inflicted upon the employee (who happens to be on the job) by persons who harbor *personal ill will*. In the latter category, the employment is irrelevant to the harm suffered.[12] The so-called *neutral risks*, such as weather conditions, are neither distinctly occupational nor personal, and thus present factual questions to be decided in each case.[13]

The Court of Appeals treated claimant's motoring hazard as a *purely neutral risk*— one he shared with other travellers on the road. In that view the appellate court *clearly was in error*. Had the traffic hazard been a purely neutral risk, claimant would have been required to show his harm was due to some increased risk factor that could be associated with his employment.[14] Neither *personal nor neutral* risks are revealed by the record. The transportation-related hazard that was responsible for claimant's harm is legally implicit in the special task that called upon him *immediately* to report to the job site. The law's demand that the offending risk be causally connected to employment is hence satisfied by the record.[15] A causal nexus firmly linking the special task to the injury inextricably connects the accident to a workplace hazard.[16]

## III.

### SUMMARY

The special-task mission, begun *under the employer's direction* during claimant's off-the-premises lunch break, subjected him to the roadway hazards in action. No risks distinctly *personal* nor any derived from a *neutral* source are revealed by the proof. *There is hence a clear connection between the task and the accidental injury suffered.* The law's requirement that the source of a compensable injury not stem from a purely personal risk stands amply met.[17] Because the risk responsible for the claimant's accident that is to be compensated is so closely associated with the task he was then carrying out, it arises out of his employment.[18] There is ample support in competent evidence for the conclusion that claimant's injury resulted

(a publication of the Oklahoma Trial Lawyers Association, Nov. 1, 1996).

**10.** 1 Larson's Workmen's Compensation Law § 7.40 (1996), at. 3–14—3–15.

**11.** 1 Larson's Workmen's Compensation Law § 7.10(1996), at 3–12.—3–13.

**12.** 1 Larson's Workmen's Compensation Law § 7.30 (1996), at 3–13—3–14.

**13.** *Darco,* supra, note 2 at 594; *Hensel,* supra, note 2 at 203.

**14.** See *American Management Systems, Inc. v. Burns,* Okl., 903 P.2d 288, 291 (1995).

**15.** For a detailed explanation of what can be deemed a neutral risk that was enhanced by on-the-job hazards, see jurisprudence discussing the proof required in Oklahoma to show compensable harm from work-related heat exhaustion. In heat stroke claims a worker's injury must be from exposure to the sun *more harmful* than that the general public would have experienced when in the same locus in quo—i.e., when present at the time and place of the worker's injurious or fatal solar exposure. *Happel v. Bell,* Okl., 352

P.2d 400, 402 (1960); *Nims & Frost v. Abner,* 188 Okl. 356, 109 P.2d 237, 238 (1941).

**16.** The record must show the worker's injury was causally related to the risks incident to the mission for the employer. See *American Management Systems v. Burns,* Okl., supra, note 14 at 290.

**17.** An earlier pronouncement in *Fox v. National Carrier,* Okl., 709 P.2d 1050 (1985), held that all risks from travel in the course of one's employment are employment-related. Claimants were then aided in the probative process by the provisions. of 85 O.S. 1981 § 27, which operated to place on the employer the burden to pierce the presumption of compensability. Section 27 was repealed in 1986. New language added to 85 O.S. 1991 § 3(7) requires the source of the employee's injury to be a work-related risk rather than one that is purely personal. As noted in *American Management Systems, Inc. v. Burns,* Okl., 903 P.2d 288 (1995), the onus of producing evidence and of persuasion now rests entirely upon the claimant. *Burns,* which changed the interplay of risks applied in *Fox,* teaches that *some risks encountered by a worker who is travelling on the job may not be treated as employment-related.*

**18.** *Oklahoma Natural Gas Company v. Williams,* supra, note 4.

from exposure to a *risk incident to his mission* for the employer. The trial tribunal's finding in his favor is hence binding and may not be disturbed on review.[19]

I join in vacating the Court of Appeal's opinion and in affirming the trial tribunal's award, but recede from today's opinion.

---

**19.** *Darco Transportation v. Dulen,* supra, note 2 at     594.