**Joyce COPELAND, Petitioner,**

v.

**BOOTS PHARMACEUTICALS, Royal Insurance, and the Workers' Compensation Court, Respondents.**

No. 86544.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 20, 1996.

Certiorari Denied April 24, 1996.

J.L. Franks and Kathryn Burgy, Frasier, Frasier & Hickman, Tulsa, for Petitioner.

Richard W. Wassall, Knight, Wilkerson & Parrish, Tulsa, for Respondents.

### MEMORANDUM OPINION

GARRETT, Judge:

Petitioner, Joyce Copeland (Claimant), filed a Form 3 in the Workers' Compensation Court on May 31, 1994, alleging she sustained an accidental injury arising out of and in the course of her employment with Respondent, Boots Pharmaceuticals (Employer), on November 11, 1992. She alleged she was bitten by a recluse spider and injured her left leg, gastrointestinal system, ulcers, mouth, eyes, nose and psychological overlay. She filed a Form 9 requesting temporary disability and medical treatment. Employer filed a Form 10, objected she was not temporarily totally disabled due to the spider bite

1. 903 P.2d 288 (Okl.1995).

and the medical treatment was not related to it. It filed an amended Form 10, raising the defense Claimant's injury did not arise out of and in the course of her employment.

On July 19, 1995, the trial court entered its order and found Claimant sustained an accidental injury to her left leg, right hand and gastrointestinal system arising out of and in the course of her employment. She was awarded compensation for temporary total disability from May 8, 1994 and continuing. The issues of overpayment and/or underpayment of temporary total disability, injury to other body parts, additional medical treatment and permanent disability, if any, were reserved for future hearing.

Employer filed a timely Request for Review with the Workers' Compensation Court *En Banc.* On November 1, 1995, a three judge panel entered its order, ruling the trial court's order was contrary to law and against the clear weight of the evidence. It vacated the order of the trial court's order and entered the following in lieu thereof:

–1.–

THAT the claimant's injuries, while same occurred in the course of her employment, did not arise out of her employment with the respondent as same did not occur as a result of an employer imposed risk or hazard. *American Management Systems, Inc. And Pacific Indemnity Company v. Sheila Mae Burns and the Workers' Compensation Court,* 903 P.2d 288 (Okla.1995).[1]

–2.–

THAT it is therefore ordered that claimant's claim for compensation be and the same hereby is denied.

In this review proceeding, Claimant contends:

1. The *Burns* decision should not have been applied to this case because its facts are distinguishable and it did not address the dual mission or indirect benefit doctrine.

2. When a claimant is forced to stay at an unclean facility, thus increasing her risk of harm due to venomous spider bites, then there exists a causal nexus between that harm and the risk of claimant's employment.

Claimant testified she worked in sales for Employer and was required to travel. When staying in Muskogee, Oklahoma, she customarily stayed at a Best Western hotel. However, on this particular trip to Muskogee, where her injury occurred, the Best Western was full, and she stayed at the Days Inn, which she described as an inferior quality hotel. She said it was necessary to have a room on the first floor to be able to watch her car where she kept pharmaceutical samples. Someone at the Best Western told her the Ramada was probably full and suggested the Days Inn. She did not attempt to call other hotels in Muskogee.

Claimant testified that a stinging sensation in her leg awoke her around 3:00 a.m. She threw off the covers and saw a brown spot on the sheet, not the body of a spider. She said:

A. I said that I could not tell you exactly that it was a spider, because I threw all the covers off the bed and all that remained was the brown spot on the sheet.
Q. And, again, you don't know if that was a spot that was there before you laid·down or not?
A. It was not an old spot. It looked like something that had just been squashed.

In *American Management Systems, Inc. v. Burns*, 903 P.2d 288 (Okl.1995), the Supreme Court held the death of a worker, who was robbed and murdered in a motel while on a business trip, occurred in the course of his employment. However, the Court held the worker's widow did not prove the death arose out of his employment. The Court discussed the well settled law distinguishing these two required elements of a compensable claim. They are not synonymous terms, and they must both be found to exist. See 85 O.S. 1991 § 3(7). "In the course of employment" relates to the time, place or circumstances under which the injury is sustained. *American Management Systems, Inc. v. Burns*, 903 P.2d at 290, n. 3, citing *Thomas v. Keith Hensel Optical Labs*, 653 P.2d 201, 203 (Okl.1982); *R.J. Allison, Inc. v. Boling*, 192 Okl. 213, 134 P.2d 980, 982 (1943). The term "arise out of employment", on the other hand, "contemplates the *causal connection* between the injury and the risks incident to employment." *American Management Systems, Inc. v. Burns*, 903 P.2d at 290, n. 4, citing *Hensel, supra* note 3 at 202; *Richey v. Commander Mills, Inc.*, 521 P.2d 805, 808 (Okl.1974); *Graham v. Graham*, 390 P.2d 892, 893 (Okl.1964); *Stanolind Pipe Line Co. v. Davis*, 173 Okl. 190, 47 P.2d 163, 164 (1935). In the instant case, the three judge panel made the finding Claimant's injury occurred in the course of her employment. This finding is not at issue, as no one disputes the fact she was traveling and had to stay overnight because of her employment. Employer has questioned whether staying at the Days Inn, as opposed to other alternatives, was necessary, however.

■ The requirement that the injury "arise out of the employment" is a more difficult issue. The "causal nexus" between Claimant's injury and the risks of her employment is the determinative question. *American Management Systems v. Burns*, 903 P.2d at 291. The *Burns* Court further defined this element:

> The 'arising-out-of-employment' element of the claim requires that an injury be *employment-related*, as opposed to one stemming from a purely *personal risk*. In short, the record must show that *Burns' death was causally related to the risks incident to his mission for the employer*. (Emphasis in original) (Footnotes omitted).

■ In discussing the "arising out of employment" element, the *Burns* Court reexamined pre–1986 workers' compensation law with regard to a claimant's burden of proof that an injury was employment-related. In 1986, § 3(7) was amended to require "the *source* of a compensable injury to be *employment-related—i.e., one that does not stem from a purely personal risk....*" *Id.* at 292. Under current law, it must be shown the risk responsible for the injury is causally connected to the employment and that it exceeds the ordinary hazards to which the general public is exposed. *Burns*, 903 P.2d at 292.

■ The Supreme Court also specifically rejected the Positional–Risk Test[2] as a means available for proving an injury's causal nexus to employment. Also, the Unknown Assailant Rule—which made an injury compensable even if the cause of the assault was not shown to be directly related to the employment—was rejected. *Id.* at 292. Under current law, the risk itself must be work-related and must be causally connected to the injury. *Id.*

Expert testimony was received in the instant case about the effect of poor housekeeping on the habitat of brown recluse spiders. Even assuming Claimant could state she was sure she was bitten by a brown recluse spider, which she cannot do, there is no evidence that her work as a sales representative for Employer has any connection to the risk of encountering poisonous spiders. Thus, her risk at being bitten is not greater than that of the general public; it is a purely personal risk.

*Burns* requires Claimant to prove her risk of being bitten by a poisonous spider was related to her employment. It is no longer sufficient to prove merely that the employment required a worker to be in a particular place and that he was injured while there. Section 3(7) and the case law following it require the risk causing the injury must be related to the employment. Under the facts of this case, the required causal connection was not proved by Claimant. Even giving consideration to the dual mission or indirect benefit doctrine, urged by Claimant, the present statutory requirement in § 3(7) of an employment-related risk is a more narrow requirement. The cases cited by claimant were decided prior to 1986, and it is for the Supreme Court to determine whether those theories are still viable under the present law.

■ Whether an injury arises out of employment presents a fact issue to be decided by the Workers' Compensation Court.

*Burns,* 903 P.2d at 291 (Citations omitted). Findings of fact made by the trial court are binding and conclusive in review proceedings before this Court, unless they lack support in competent evidence. *Parks v. Norman Municipal Hospital,* 684 P.2d 548 (Okl.1984). It is only when factual findings lack the support of any competent evidence that the trial court's decision may be determined to be erroneous as a matter of law. *Parks, supra.* The order of the Workers' Compensation Court *En Banc* is supported by some competent evidence.

ORDER SUSTAINED.

CARL B. JONES, P.J., and JOPLIN, J., concur.

2. This test is described in *Burns,* at 291–92, n. 13, as follows:

"Under the positional risk doctrine, an injury may be said to arise out of employment if the injury would not have occurred *but for* the fact that the conditions or obligations of the employ-

ment placed claimant in the position where he was injured by a neutral force, meaning by 'neutral' neither personal to the claimant *nor distinctly associated with the employment.*" A. Larson, *the Positional–Risk Doctrine in Workmen's Compensation,* 1973 Duke L.J. 761. (Emphasis added).