BROWN v. INFRASTRUCTURE & ENERGY ALTERNATIVES



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BROWN v. INFRASTRUCTURE & ENERGY ALTERNATIVES

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BROWN v. INFRASTRUCTURE & ENERGY ALTERNATIVES
2021 OK CIV APP 10
485 P.3d 884
Case Number: 118390; Comp.w/118391
Decided: 09/18/2020
Mandate Issued: 04/07/2021
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2021 OK CIV APP 10, 485 P.3d 884

 

AUSTIN DAVID BROWN, Petitioner,
v.
INFRASTRUCTURE & ENERGY ALTERNATIVES, LLC and THE WORKERS' COMPENSATION COMMISSION, Respondents.

PROCEEDING TO REVIEW AN ORDER
OF THE WORKERS' COMPENSATION COMMISSION

AFFIRMED

Bob Burke, D. Eliot Yaffee, Oklahoma City, Oklahoma, for Petitioner,
and
Leah P. Keele, Lori R. Whitworth, Tulsa, Oklahoma, for Respondent Infrastructure & Energy Alternatives, LLC.

Bay Mitchell, Presiding Judge:

¶1 The petitioner/employee/claimant appeals from an order of the Workers' Compensation Commission that affirmed an administrative law judge's (ALJ's) order finding that the petitioner's injury was not compensable because it did not occur within the course and scope of petitioner's employment with the respondent/employer. Because the uncontroverted facts show that the accident occurred not in the course of employment but on the petitioner's daily commute to work, we affirm.

BACKGROUND

¶2 The relevant facts are uncontroverted. The petitioner and three co-workers were involved in a car accident on their way to a job site. All occupants of the car were employed by the petitioner's employer, Infrastructure & Energy Alternatives, LLC (IEA). IEA was a general contractor building a large wind farm near Ponca City, Oklahoma. The petitioner had temporarily relocated from Texas in order to work on the project. He had been paid mileage to relocate but was not otherwise directly reimbursed for his daily travel from his temporary residence to the job site. He was paid, however, in addition to his wage of $25 per hour, $100 per day for meals, lodging, and other "incidental expenses." As is typical, the parties refer to this additional pay as per diem.[1]

¶3 On July 17, 2017, as was customary, the petitioner and three co-workers were carpooling to the job site, which was 30 to 45 minutes away. The employer did not provide lodging or transportation but expected its workers to be onsite by 7:00 a.m. for a mandatory safety meeting. The petitioner was a passenger in a car owned and driven by a co-worker. The party was traveling on a two-lane state highway. They had nearly arrived at the congregation point for the mandatory safety meeting with just a single, lefthand turn remaining. Unfortunately, while engaged in this final turn, the employee's vehicle collided with a truck headed in the opposite direction. The petitioner was seriously injured and filed this claim for worker's compensation benefits.

¶4 The employer objected on the basis that the employee's injuries were not compensable because they had not occurred in the course and scope of employment, but as part of the "employee's transportation to and from his or her place of employment" which is not, by definition, a "compensable injury" under applicable law. 85A O.S. Supp.2013 §2(9) & (13). After a full hearing, the ALJ agreed and denied compensation. On review, the Workers' Compensation Commission affirmed. The employee timely appealed.[2]

STANDARD OF REVIEW

¶5 The petitioner's injuries occurred after the effective date of the Administrative Workers' Compensation Act (AWCA), making it the applicable law. See Williams Companies, Inc. v. Dunkelgod, 2012 OK 96, ¶18, 295 P.3d 1107, 1113. The relevant standard of review provides we may modify, reverse, remand for rehearing or set aside a judgment if it was "[a]ffected by [an] error of law" or "[c]learly erroneous in view of the reliable, material, probative and substantial competent evidence ...." 85A O.S. Supp. 2014 §78(C). Our review of legal questions is de novo. Orcutt v. Lloyd Richards Pers. Serv., 2010 OK CIV APP 77, ¶8, 239 P.3d 479, 481. However, "on issues of fact, the Commission's order will be affirmed if the record contains substantial evidence in support of the facts upon which it is based and the order is otherwise free of error." Brown v. Claims Mgmt. Res. Inc., 2017 OK 13, ¶ 11, 391 P.3d 111, 115.

ANALYSIS

¶6 The petitioner claims that the commission erred in affirming the ALJ's conclusion that the injury did not arise out of the petitioner's course and scope of employment with his employer. The AWCA, unlike its predecessor, attempts a general definition of "course and scope of employment." 85A O.S. Supp.2013 §2(13). The definition is critical because injuries that do not arise in the course and scope of employment are, by definition, not compensable. 85A O.S. Supp.2013 §2(9) ("Compensable injury" means damage or harm to the physical structure of the body, or prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, caused solely as the result of either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment.")

¶7 As used in the act, "'[c]ourse and scope of employment' means an activity of any kind or character for which the employee was hired and that relates to and derives from the work, business, trade or profession of an employer, and is performed by an employee in the furtherance of the affairs or business of an employer." Id. §2(13). The act then hones the definition somewhat by providing three examples of activities that are within the definition and four examples of activities that are not within the definition. Id.

¶8 The definition includes, among other irrelevant inclusions, "travel by an employee in furtherance of the affairs of an employer that is specifically directed by the employer." Id., (referred to herein as "employer-directed travel").[3] The definition does not include, among other irrelevant exclusions, "an employee's transportation to and from his or her place of employment ...." Id., (referred to herein as an employee's "commute").

¶9 At its core, this appeal arises from the parties' disagreement as to the employee's status at the time of the accident in question. The employee sees the accident as having occurred during employer-directed travel. The employer on the other hand, sees the accident as having occurred during the employee's commute to work.[4]

¶10 Adoption of the employee's reading would turn all non-compensable commutes into compensable employer-directed travel, and must therefore be rejected. Here, it is clear that the legislature intended to exclude commutes from the definition of scope and course of employment even though such commutes could be considered employer-directed travel generally, and certainly might be in particular situations. However, because the employee's construction would make all accidents that occur during the course of a commute potentially compensable, we cannot adopt it. See Udall v. Udall, 1980 OK 99, ¶11, 613 P.3d 742. ("In ascertaining legislative intent, the language of an entire act should be construed with a reasonable and sensible construction."); Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n., 1988 OK 117, ¶7, 764 P.2d 172. ("[S]tatutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits."); Mustain v. Grand River Dam Authority, 2003 OK 43, ¶23, 68 P.3d 991, 999. ("Generally, statutes addressing the same subject matter are to be construed in a manner which reconciles differing provisions and imparts to each of them an intelligent effect.").

¶11 Further, none of the case law the employee relies on supports this position. In the proceedings below, the petitioner primarily relied on Pina v. American Piping Inspection, Inc., 2018 OK 40, 419 P.3d 231, for the proposition, reiterated on appeal, that the petitioner's travel was "in furtherance of the affairs of an employer that is specifically directed by the employer." Although Pina is somewhat analogous to this case, there several critical facts that distinguish it.

¶12 In Pina, an employee drove to work at an oil rig 130 miles away from his home. Id. at ¶1. He drove his personal vehicle, for which he was compensated $50 per day, in addition to per diem for meals and lodging. Id. ¶1-2. The employer also paid for the employee's gas, ice, and water, but only if the employee stopped at a gas station specified by the employer and at a time designated by a supervisor. Id. at ¶3. After the supervisor paid for gas and other supplies, the employee would then proceed to the oil rig, still 30 miles away. Id. ¶4. The supervisor testified that he considered the employee "at work" when he arrived at the gas station. Id. ¶5. The employee was injured in a car accident after leaving the gas station, but before arriving at the oil rig. Id. ¶5. The Oklahoma Supreme Court determined that the employee was acting within the course and scope of employment of the accident under the AWCA definition because his act of transporting the ice, water, and the gas inside his truck to the job site was both in furtherance of the affairs of and specifically directed by the employer. Id. ¶20

¶13 Under our nomenclature, the Pina employee, at least after he left the gas station, was no longer commuting but engaged employer-directed travel -- a special task -- to haul supplies to the oil rig. There are no such analogous facts in this case.

¶14 The only direction given to the petitioner here was to get to the job site by 7 a.m. The employer was completely indifferent to how that happened and gave no direction to the petitioner as to how to get there. Nor was there an intermediate point at which the employer directed the petitioner to meet. The employee points to the facts that he lived out of state and considered himself "at work" the moment he arrived in Oklahoma, that his sole purpose for being in Oklahoma was for the job, and that he was directed to be at the job site at 7 a.m. However, as noted above, such a reading would make every accident that occurs during a daily commute a compensable accident. This reading would completely thwart what we view as the legislature's clear intent to remove daily commutes from the definition of "course and scope of employment," and we decline to adopt it.

¶15 The petitioner also points to the fact that the employees in the car were allegedly discussing the work they had to do that day as evidence that the travel was made in furtherance of the affairs of the employer. However, the petitioner has no counter to the employer's response that it did not direct or require the employees to have such discussions. Discussion of work while driving to work does not transform a commute to work into employer-directed travel.

¶16 Finally, we note the employee's argument that the per diem was intended to cover his travel expenses as further evidence that he was engaged in employer-directed travel as opposed to a commute. Although the employer contests the notion that the per diem was intended to cover gas or other travel expenses, we do not find any reason to settle that dispute here. After all, it was undisputed below that the per diem could be used for any purpose whatsoever and it was paid to all employees, like the petitioner, who where working more than 150 miles away from home. It was undisputed that the employer did not direct the employee to use the per diem for gas, transportation, or any other purpose. The per diem was simply an additional payment to the employee intended to cover the cost of working far from home. Such a payment does not convert a commute to work into employer-directed travel or make the employee incapable of commuting to work from his temporary residence. Even assuming the per diem was intended to cover transportation expenses in part, such a fact is insufficient in and of itself to transform an employee's daily commute into "travel by an employee in furtherance of the affairs of an employer that is specifically directed by the employer." As for this case, it is sufficient to say that payment of a per diem that is intended as reimbursement for general expenses, including transportation expenses, is insufficient to transform a daily commute into compensable, employer-directed travel.[5]

¶17 Indeed, none of these facts are sufficient, individually or collectively, to transform what we see as the epitome of a daily commute into compensable, employer-directed travel. The employer here gave no direction to the employee other than where to be and when. The employee was not on any special errand, but was on the way to the job site where he was to clock in and begin work each day. The employee was solely responsible to choose the method and means of his own transportation. Under these facts, we hold that the accident occurred during the "employee's transportation to and from his or her place of employment ...." 85A O.S. Supp.2013 §2(13). Accordingly, the employee's injuries are not compensable under applicable law. Id. §2(9).

¶18 AFFIRMED.

SWINTON, V.C.J., and PEMBERTON, J., concur.

FOOTNOTES

[1] The precise purpose of the per diem payment was disputed below. One employee testified he believed it was intended to include "living expense[s], gas, mileage, whatever you need to make it ... easier to work" at a distant location." Tr. (April 29, 2019), pg. 60. The employer, on the other hand, looked to its own policies and the IRS's tax treatment, under which per diem includes only meals, lodging, and "related incidental expenses." Incidental expenses, according to the employer, citing federal travel regulations, means only "fees and tips given to porters, baggage carriers, hotel staff, and staff on ships" and nothing more. 41 C.F.R. § 300--3.1. However, as discussed below, it is not necessary to determine the precise purpose of the per diem payment to resolve this case.

[2] Mackenzie Edward Demers, another employee of IEA, was also injured in the crash and he also sought workers' compensation benefits. The two cases were consolidated for trial, below. Mr. Demers's request was also denied. He appealed separately and the cases were made companions. See Case No. 118,391, which is decided concurrently with this case.

[3] This has been referred to, both before and after the AWCA, as the "special task" exception to the "going and coming" rule. See, e.g. Robison Med. Res. Grp. v. True, 2015 OK CIV APP 94, 362 P.3d 1155; Stroud Municipal Hospital v. Mooney, 1996 OK 127, 933 P.2d 872.

[4] Before the ALJ, the petitioner also argued that his injuries actually occurred on the employer's premises because, he argues, the force of the impact pushed the employee's car off the highway and onto a short driveway connecting the highway to the employer's premises. The employer disputed that the injuries occurred on its premises, and the ALJ found in favor of the employer on this issue. Although the employee makes passing reference to this argument in its brief in this appeal, the argument was not made before the commission, nor was it referenced in the petition in error or set forth as a separate proposition of error in the petitioner's brief. The employee's failure to raise this argument before the commission forfeits any opportunity to raise it on appeal. See 85A Supp. 2013 §78(C) (noting that the order of the commission, not the ALJ's order, is the order appealed). See also City of Tulsa v. Mayes, 2017 OK CIV APP 1, ¶ 10, 387 P.3d 367 ("The scope of this Court's review of the panel's order stands limited to the issues Employer presented, with the required specificity, in its request for panel review."). Although City of Tulsa was decided under the former court-based workers' compensation system, we believe the reasoning applies equally to the commission-based scheme.

Nevertheless, to the extent the petitioner is found to have preserved the issue for review, we find that the ALJ's finding that the injury occurred off the employer's premises was supported by substantial evidence. Although one employee testified that he believed the front wheels of the car the employees were traveling in had entered the gravel driveway before the accident, the police report, the photographic evidence, and the testimony of the supervisor on site all suggested the employee's car was on the highway when the accident occurred, and came to rest off the employer's premises. Accordingly, to the extent the issue was properly raised on appeal, we find the ALJ's finding, affirmed by the commission, was supported by substantial evidence.

We also noted that the petitioner's reliance on Brown v. Claims Mgmt. Res. Inc., 2017 OK 13, 391 P.3d 111, for the proposition that his injuries are compensable because he was "performing employment services" at the time of his injury is not apt. The analysis in Brown does not in any way support petitioner's claim that his commute to work was "in the course and scope of employment." Brown concerned whether an injury that occurred in an employer-owned stairwell inside the employer's building actually occurred on the employer's premises. Because we do not disturb the finding that the employee's injuries occurred off the employer's premises, Brown is inapplicable.

[5] The petitioner points to other cases that discuss various exceptions to the rule that commuting is not a compensable activity, including where the employer pays the employee's travel expenses. Although we acknowledge the fact of payment of travel expenses is one factor to consider when determining whether an employee's travel is a commute or employer-directed, we decline to adopt a bright-line rule that an employer's payment of per diem is decisive on the issue, even where that payment is intended to cover travel expenses. Further, each of the cases cited either did not find the injury occurred within the scope of employment at all or is factually distinguishable in some significant way from this case. See, e.g., Fluor Engineers & Contractors, Inc. v. Kessler, 1977 OK 37, 561 P.2d 72, 1977 OK 37 (denying compensability for an accident occurring on the way to new employment, because the claimant was not yet an employee); Barnhill v. Smithway Motor Express, 1999 OK 82, 991 P.2d 527, (upholding denial of a claim for an employee's injury incurred while attempting to place an employee-owned refrigerator into an employer-owned tractor-trailer); Novak v. McAlister, 1956 OK 205, 301 P.2d 234 (an employee's fall upon returning from lunch, before reentering the employer's premises, did not arise out of employment); Christian v. Nicor Drilling Co., 1982 OK 76, 653 P.2d 185 (an employee's injury, incurred in a car accident on the way to work, was compensable because employer provided the transportation, or authorized a deviation from the usual, employer-provided transportation); Robison Medical Resource Group v. True, 2015 OK CIV APP 94, 362 P.3d 1155 (affirming the compensability of an employee's injury, which occurred while driving home from work, because the employer paid for the employee's travel and the employee was not traveling to his usual place of employment); L.E. Jones Drilling Co. v. Hodge, 2013 OK CIV APP 111, 315 P.3d 1025 (affirming compensability of the accident of an employee while driving an employer-owned truck).

Additionally, we note that the majority of these cases were decided prior to the enactment of AWCA, which provides its own definition of course and scope of employment. Any case, such as this one, interpreting that phrase must begin with the text of the statute, which explicitly excludes "an employee's transportation to and from his or her place of employment ...." 85A Supp. 2013 §2(13).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 77, 239 P.3d 479, ORCUTT v. LLOYD RICHARDS PERSONNEL SERVICE
Discussed
 2013 OK CIV APP 111, 315 P.3d 1025, L.E. JONES DRILLING CO. v. HODGE
Discussed
 2015 OK CIV APP 94, 362 P.3d 1155, ROBISON MEDICAL RESOURCE GROUP v. TRUE
Discussed at Length
 2017 OK CIV APP 1, 387 P.3d 367, CITY OF TULSA v. MAYES
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1956 OK 205, 301 P.2d 234, NOVAK v. McALISTER
Discussed
 2003 OK 43, 68 P.3d 991, MUSTAIN v. GRAND RIVER DAM AUTHORITY
Discussed
 1996 OK 127, 933 P.2d 872, 67 OBJ 3633, Stroud Municipal Hospital v. Mooney
Discussed
 2012 OK 96, 295 P.3d 1107, WILLIAMS COMPANIES, INC. v. DUNKELGOD
Discussed
 1977 OK 37, 561 P.2d 72, FLUOR ENGINEERS & CONTRACTORS, INC. v. KESSLER
Discussed at Length
 1980 OK 99, 613 P.2d 742, Udall v. Udall
Cited
 2017 OK 13, 391 P.3d 111, BROWN v. CLAIMS MANAGEMENT RESOURCES INC.
Discussed at Length
 2018 OK 40, 419 P.3d 231, PINA v. AMERICAN PIPING INSPECTION
Discussed
 1982 OK 76, 653 P.2d 185, Christian v. Nicor Drilling Co.
Discussed
 1999 OK 82, 991 P.2d 527, 70 OBJ 2946, Barnhill v. Smithway Motor Express
Discussed
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Discussed at Length
 85A O.S. 78, Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA